May it please the Court, I'm Ray Kaler, Counsel for Appellant Lacey Filosa. I'd like to focus my time today on the duty to defend and the difference between the duty to defend and the duty to indemnify in this case. The duty to defend is broader than the duty to indemnify, and the duty to defend can arise even if there is no coverage. They require different legal analysis, different legal rules apply to the two duties. The duty to defend arises if the complaint alleges facts that could conceivably be covered under the insurance policy. It requires an insurer to give the insured the benefit of any doubt in interpreting the policy, and any uncertainty works in favor of providing a defense to the insured. In addition to different legal rules applying, different facts are considered in analyzing the two duties. The duty to defend is determined solely based on the allegations of the complaint and the language of the policy. The coverage determination takes into consideration other facts and requires an investigation by the insurer. So applying those rules to the facts in this case, the analysis on the duty to defend starts with looking at the allegations of the second amended complaint. The second amended complaint named James Burns, the named insured, individually. It alleged that Lacey Filosa contracted flesh-eating bacteria on the premises of Painless Steel. Isn't this primarily a coverage case? Not at all. Scottsdale denied a duty to defend and coverage, and that's the point is that both of those duties have to be analyzed separately. The analysis of the duty to defend is quite different than the coverage analysis, although there is some overlap. With regard to the duty to defend, you look at the allegations of the complaint. As I said, Mr. Burns was named individually in the second amended complaint. Mr. Burns says he doesn't have coverage. The type of evidence of intent that Scottsdale cites from Mr. Burns is clearly inadmissible and irrelevant with regard to analyzing the duty to defend and coverage under Washington law. What about when you found your amended complaint? I thought that you basically disavowed that there were these personal claims against Burns. There was language in the motion to amend the complaint that they were not being named as people subject to individual liability, but the second amended complaint itself does not contain any such language. It identifies them as the sole owners of painless steel, but it doesn't disavow. So you basically say, here, I'm going to amend this complaint, and it doesn't really include them on a personal level, but now the insurance company should have defined, despite that, that it had a duty to defend against a claim that wasn't made. The claim... That's where it ends up, isn't it? Well, I don't think so, because the second amended complaint specifically alleged that the defendants, which included James Burns at that point, failed to adequately warn Lacey Filosa of the risk of infection, and Judge Castleberry, the judge in the underlying tort case, and the Washington Court of Appeals both found that the allegations in the second amended complaint could conceivably result in personal liability on the part of James Burns. At the time that the motion to amend the complaint was drafted, we didn't know that Mr. Burns personally drafted the warnings document that Ms. Filosa was given. That came out, actually, after settlement occurred in this case during the course of the litigation in this insurance case. But looking at... When you're analyzing the duty to defend, you only look at the allegations of the complaint in the language of the policy. The language of the complaint clearly contained allegations that could impose personal liability on Mr. Burns. And then you look at the language of the policy, and Section 2, who is an insured, the very first paragraph under that section says that the named insured, if you're named in the declarations as an individual, and Mr. Burns was, you and your spouse are insureds with respect to the conduct of a business of which you are the sole owner. And it's undisputed that Mr. Burns was the sole owner of Painless Steel. Okay, but the complaint, and this is what I think the district court points out, is that twice that they were the Burns's as the owners, right? And you're saying now, well, he was actually the sole owner, but that's not what the complaint said. Well, there's two responses to that. Okay. One, Scottsdale never identified in any correspondence or any internal memo anywhere that they relied on that allegation that the Burns's were both the owners of Painless Steel as a basis for denying a defense. And during the course of the discovery that did occur in the underlying tort case, Mr. Burns answered interrogatories, clearly stating that he was the sole owner of Painless Steel. And that was in October of 2007. By the time of Scottsdale's final denial of a defense in December 2007, they knew that he was the sole owner of Painless Steel. And if they had relied on that as a basis, that allegation and the complaint that both of the Burns's were owners as a denial of the duty to defend, at the point that they became aware that Mr. Burns was, in fact, the sole owner, they should have reevaluated their decision. But as I said, there's no evidence that they ever relied on that statement in the second-minute complaint as a basis for denying a duty to defend. Now, Scottsdale tries to avoid the language in paragraph 1A of section 2 by pointing to a sentence below paragraph 3 of section 2. And that was the sole basis for Scottsdale's initial several denials of the defense and coverage. There's an endorsement saying that paragraph 3 of section 2 doesn't apply. So if this sentence that Scottsdale relied on can reasonably be read as being part of paragraph 3, then it's not part of the policy under the endorsement. And if there's any ambiguity about whether that sentence is part of paragraph 3, under Washington law, that ambiguity must be strictly construed against the insurer. The policy has to be interpreted as an average purchaser of insurance would interpret it, not as a lawyer or an English professor would interpret it. An average purchaser of insurance looking at this policy could reasonably think that this sentence, which is directly below paragraph 3, is part of paragraph 3 and, therefore, doesn't apply because of the endorsement. An average purchaser of insurance would not compare margins in the policy or indentation from one section to another. And nowhere in the policy does Scottsdale explain the significance of different indentation or margins that they're now arguing and that the district court relied on. An average purchaser of insurance would simply look at the paragraph numbers and see that that sentence is directly below paragraph 3 and think that it's part of paragraph 3. Scottsdale could have numbered it paragraph 4 to make it clear that it was a separate paragraph, if that's what they intended, but they didn't do that. So at the very least, there's a reasonable interpretation of the policy. There's an ambiguity as to whether that sentence is part of paragraph 3 and Scottsdale improperly interpreted or resolved that ambiguity. Well, if we read it the way you want to, only applying to paragraph 3, we have to disregard the formatting of the policy, right? I don't think so. It's directly below paragraph 3, and it's not separately numbered, and there's nowhere in the policy that says if something is not indented, if the margin is flush with the left-hand side, it's part of that whole section. It's not part of just the paragraph that it appears below. It's ambiguous whether that's part of paragraph 3 or not, and under Washington law, if there is ambiguity in the policy, at least at the duty to defend stage, the insurer has to resolve that in favor of providing a defense and then file a declaratory action on the issue of coverage, have the court rule on the ambiguity and resolve that. It can't simply abandon the insured and refuse to defend. If there is a reason... I'm just not understanding this. No person or organization in an insured, with respect to the conduct of any current or past partnership, joint venture, or limited liability company that is not shown as a named insured in the declarations. Okay. And the named insured in this policy was? James Burns. And this is ambiguous because? There's two issues. One issue is whether it's even part of the policy, because if it's part of paragraph 3, under the endorsement that says... The business... Paragraph 3 of section 2 doesn't apply. So if that sentence is part of paragraph 3, then it's not part of the policy at all, and we go back to... Was he conducting a business? He was conducting a business, Painless Steel. He was the sole owner of it. And then you go back to paragraph 1A, which says if you're designated in the declarations as an individual, then you and your spouse are insured with respect to the conduct of a business that you solely own. And the allegations in the complaint related to... The complaint warned that he was the sole owner, correct? Say that again? He wasn't the sole owner in the complaint. The complaint said that Mandy and James Burns were the sole owners of Painless Steel. But that was, as I said, that was resolved during the course of the underlying tort litigation and interrogatory answers that... When is the duty to defend? When does it take place? Well, the duty to defend is analyzed at the time... At the time of the complaint. At the time of tender to the insurance company. Right. Okay, so at the time of tender, which means here, this complaint, right? Well, there was... Were there two tenders? There were, I think, three or four tenders, yeah. Which is typical. So what was the point of the last tender? Well, I'm not sure what the date of the last tender was, but after the complaint was amended to... It was in October that the complaint was amended to add Mr. Burns personally as a defendant. And then Scottsdale's final denial of the defense and coverage occurred in December when they obtained a letter from an attorney from a law firm in California saying that their opinion was that there was no coverage. So that was the last point at which Scottsdale communicated a denial of the defense and coverage. And they knew by that time that James Burns was the sole owner of Painless Steel because that had been flushed out in discovery in the underlying tort litigation. Well, did they know that? What was the status of the complaint at that time? The complaint was still the second amended complaint. So I guess my question is, I mean, there's a certain thing where, you know, the reason that, well, duty to defend is broader, and part of the belt and suspenders on that is that you don't have to go out and hunt and peck and do some kind of investigation. You're looking at the allegations and the complaint and you're construing them broadly as to what might happen, and therefore often insurers have to step in. But if that's the controlling complaint, I'm not sure why they wouldn't have been justified to deny the defense. It certainly wouldn't have been justified at the time that they sent the final denial because it was known at that time that Mr. Burns was the sole owner. So what's your best case under Washington law as to this timing issue? If we go beyond the complaint. You're basically saying we're going to go beyond the complaint and we're going to go to some kind of actual knowledge. Well, there is case law. The Vanport Holmes case is one example that says that an insurer can go beyond the allegations of the complaint in order to grant a duty to defend. They can't go beyond the allegations of the complaint to deny a duty to defend. I thought what they were doing is denying their duty to defend, correct? They were denying their duty to defend. So you're just telling me they can't go beyond the complaint, which basically was constricted by the second amended complaint, which would have, if you looked at it, said, well, I don't have a duty to defend here. They can't go beyond the allegations of the complaint to deny a duty to defend, but they can if there's information known to them that would support a duty to defend. So at the point that they became aware that James Burns was the sole owner. They can or they must go beyond. Well, I'd have to look at the exact language of the cases, but I think the rule is that if they have knowledge that supports a duty to defend, they have to apply that. They can't just ignore it and deny a duty to defend despite the fact that they have knowledge that would support a duty to defend in spite of the allegations of the complaint. Thank you. May it please the Court, my name is Jeff Bridgman. I'm an attorney with Ogden Murphy Wallace representing Scottsdale Insurance Company here today. We're requesting that this Court affirm Judge Lasnik's well-reasoned decision dismissing Lacey Phyllos' claims against Scottsdale Insurance as assignee of James Lee Burns. This case presents a somewhat unique set of circumstances because here we have a situation where the insured James Lee Burns and the insurance carrier Scottsdale both agree that Mr. Burns did not in any way, shape, manner or form intend to purchase a policy of insurance to cover his business operations being run at the building. I don't want to spend a lot of time on facts because I know the Court has had a chance to read all those, but I'd like to make sure that a couple of key facts are out there. Mr. Burns owns a number of businesses. In his personal capacity, he owns a multi-unit apartment building in Everett. As it turns out, he also owns one of the businesses that operates in that multi-unit apartment. He has carefully incorporated that business using Washington State Limited Liability Company Act in order to protect his interests. He looked at buying insurance on a professional basis and found there was no insurance that would provide coverage for painless steel Everett LLC. And thus, he relies on the Limited Liability Company Act to protect the LLC in his interests because he can't afford insurance for it. With regard to the building, he needs to have insurance for it because he wants to protect his significant $500,000 investment in the building. Also, he owes money on the building and it's important that that building be insured. The key issue in this case really is the document that counsels put up right here. There are a lot of other interesting facts and interesting theories that were raised, but the core most important issue is who is insured? Because if Mr. Burns is not an insured with respect to the conduct of painless steel Everett LLC, there's no need to talk about anything else. Judge Lastnick got it exactly right, that when you read the who is an insured provision, in the context of the entirety of the policy, it's a landlord's policy, lessor's risk only. It goes through. It identifies him as an individual. It identifies him as a property owner. And then when we look at who is an insured, if you are an individual, you are an insured with respect to the conduct of a business of which you're the sole owner. Moving down, it is clear that the last unnumbered paragraph, based on its margins, based on the margins that are used throughout the entirety of the policy, that that modifies the entirety of Roman numeral two, who is an insured. If we don't find judicial estoppel applies to prevent a claim against Mr. Burns personally, would there be coverage under the policy? Absolutely not. Yeah. I'm glad you asked that because the judicial estoppel has sort of taken on a life of its own. For what it's worth, in our moving papers, we noted in a footnote, the real problem here is that there's sort of a matter of playing fast and loose. Whether that's legally cognizable or not, judicial estoppel is probably the correct legal doctrine that you would apply on that. But you do not need to address judicial estoppel in order to find in Scottsdale's favor because the policy clearly and unequivocally, there's no ambiguity, does not provide any coverage for any human being, including the named insurer, James Lee Burns, with respect to the conduct of painless steal, Everett LLC. When you look at the complaint that plaintiffs filed in the underlying action, the second amended complaint, the most important complaint, in the caption, it identifies James Lee Burns and Mandy Burns as sole owners of painless steal, Everett LLC. Well, I realize the duty to defend and the duty to indemnify are different. Oh, absolutely. But on the facts of this case, is the analysis really any different? No. Because the analysis would be different. I mean, the duty to defend, the duty to indemnify, with regard to what we've got here where you just look at the policy, if you look at the policy and then you look at the complaint, and if it's clearly not covered, there's no duty to defend. If there's no duty to defend, you also happen to, you know, there's obviously no duty to indemnify. But there's no reason to go beyond the duty to defend, and frankly, there's no reason to go beyond the who is insured, which incidentally is what Scottsdale repeatedly, that was their core basis for denying coverage. But you could also go to professional services. You could. As an alternative. You could go to professional services as an alternative basis, as Judge Lasnik ruled, and, you know, like I said, the judicial estoppel sort of doesn't matter because the only allegations of liability against Mr. Burns were in his capacity as the owner, the sole owner of Painless Steel. I wanted to correct something that counsel indicated, just to make sure the record's clear. One, with regard to the second amended complaint and the incorrect designation of Jim and Mandy Burns as sole owners, plural. First off, the Selman-Brighton letter sent on December 7th, which is in the record, does clearly indicate that that is one of the bases that Scottsdale at that time was considering, was that they had identified two as opposed to one sole owner. Next, while plaintiff is, I'm sorry, appellant is correct that in the underlying case, they had obtained an interrogatory response from Mr. Burns indicating, clarifying, in fact, fixing his counsel's misstatement that they were the sole, he was rather the sole owner. That information was never provided to Scottsdale until this lawsuit started. And I challenge counsel or the clerks to find a place in the record. And that his statement that as of the time Scottsdale denied defense, following the second amended complaint, that they had knowledge of the interrogatory underlying lawsuit, you're saying that's just not true? That's factually incorrect. We didn't have knowledge as to whether or not James Lee Burns was, in fact, the sole, as in only owner, as opposed to the allegations in the complaint. We had received information. My client had received information from Dylan Jackson, Painless Steel, and the Burns' attorney that was erroneous, as it turns out, indicating that both Jim and Mandy Burns were owners. I hate to ever leave seven minutes for the court, but unless the court has questions or wants to address something, I don't know that I have a whole lot more to address without becoming repetitive. Okay. Thank you, Your Honor. On the issue of when they knew that Mr. Burns was the sole owner, I would just cite to deposition testimony at ER 246 to 247. All right. Thank you. The case just argued is submitted for decision. Before hearing the last case for argument, the court will take a five-minute recess. All rise. The case is submitted.
judges: Schroeder, McKeown, Callahan